*119] *John Browne *against* President and Directors of the Insurance Company of Pennsylvania.

It is no objection against a bankrupt being a witness, that the names of his assignees were not substituted in the action, immediately on his obtaining his certificate of conformity.

COVENANT on a policy of insurance, dated 30th January 1795, on the brig Betsey, William Bass, master, from Philadelphia to Bourdeaux, and at and from thence back to Philadelphia, upon all kinds of lawful goods and merchandizes laden or to be laden on board her. "The goods warranted to be lawful, and the brig "an American bottom." The defendants subscribed under their common seal $13,333 and 33 cents, at a premium of 9 per cent.

An amicable action was entered to March term 1800. On the 7th December 1801, the plaintiff obtained his certificate of con-

formity to the act of bankruptcy.   In September term 1804, on motion, the names of his assignees were substituted.

It appeared by the register of the brig, that she was an American bottom, and solely owned by Samuel Penrose who chartered her on the 26th December 1794, to the plaintiff.

The original invoice and bill of lading shewed, that the outward bound cargo belonged to the plaintiff, who consigned the same to Du Busseau and company, merchants, in Bourdeaux. The return cargo also belonged to him, as appeared by original documents.

The brig in her voyage from Bourdeaux was captured on the high seas, by the armed vessel, called the Thetis, commanded by Thomas B. Hutchins, a subject of his Britannic majesty, and sent into Bermuda, where she was libelled as enemy's property, on the 4th July 1795.   Captain Bass answered the usual interrogatories, and swore, that the vessel was owned by Penrose, and the cargo by the plaintiff ; he sailed from Bourdeaux on the 3d May on his return voyage, and was brought to, on the 10th June, by the privateer Experiment, captain Nash, who after examining his papers kept many of his French letters ; and that he was afterwards captured on the 15th June by the Thetis, and sent into Bermuda, and that none of the ship's papers were false or colourable.   The oaths of Penrose, Browne and his clerk, were also taken, establishing the property of the vessel and cargo as before mentioned.

On the 14th August following, JOHN GREEN, esquire, the judge of the Vice Admiralty Court of Bermuda, pronounced his interlocutory decree, whereby he declared the vessel to be truly American ; but that a letter from Charles Burgeron to John Loupe, found on board, manifestly contradicted the proofs as to the cargo ; he gave sixty days for further proof, and directed the *cargo to be appraised, and stipulation given for the [*120 amount, which was done accordingly.

Two letters were contained in the admiralty exhibits, said to have been written by Charles Burgeron, who transacted business for Du Busseau and co., to John Loupe and company, in Philadelphia.   The first, dated March 8, 1795, acknowledged the receipt of their three letters.   Bass had arrived in the Betsey, and they will dispose of the cargo on the best terms ; they are sorry he is not naturalized, and cannot carry on trade in his own name ; they press him to send a large cargo by himself or friend, and to send provisions ; Indian corn was in demand ; they would soon write to John Browne.   The second was dated the 25th April 1795, wherein it is said, that they have done all they could to make them a good return, and have written to John Browne ; they hope that their vessel will be laden with provisions, &c.

On the 14th October 1795, captain Bass was again examined on interrogatories, and declared that he never heard of Loupe, and co. until he was brought into Bermuda, and that the cargo really, and in truth, belonged to Browne.   John Loupe was also

4 YEATES—8

[Browne *v.* Insurance Co. of Pennsylvania.]

examined, and declared that he was naturalized in America, though born in France; he had recommended Browne to Busseau and co., and that he was in no wise interested in the cargo, which he believed to be the property of Browne; he swore, that he knew no such house as Loupe and co., and that he had never wrote the letters referred to in the exhibits.   They were corroborated in their testimony, by the oaths of William Pickham and William Lightford.

The judge hereupon decreed the restitution of the cargo, on the 4th December 1795, but declared there was probable cause of seizure.   From this sentence, the advocate general appealed, and a stipulation was given to prosecute the appeal.

The cause came on to be heard before the Lords Commissioners of Appeal, in Great Britian, the earl of CHATHAM, Lord President of the council, Sir RICHARD PEPPER ARDEN, master of the rolls, Lord WALSINGHAM and Sir WILLIAM WYNNE, being commissioners; and on the 28th July 1798, they gave their final sentence.   They thereby reverse the sentence of the vice admiralty court in Bermuda, and decree, that the cargo is good and lawful prize, belonging to the enemies of Great Britain; affirm that part of the decree, which directs the taxed costs of the captor to be paid by the claimants; and direct a monition to issue to William Bass, and Christian Ewald, (the clerk of the plaintiff Browne) claimants, and to James Perot and William Sears, the sureties to answer the appeal, for the payment of 4539l. 17s. 4d. currency of Bermuda, being the appraised value of the cargo, within fifteen days after the service of the monition.

*121]   *To prove an offer to abandon to the officers of the insurance company, the deposition of the plaintiff taken after his certificate of conformity, was produced and objected to.

The defendants' counsel insisted, that the carrying on the suit after the plaintiff's bankruptcy, was voluntary in him until the last September term; or at least, that he acquiesced therein; and he was therefore liable for the intermediate costs until that time.   The *quantum* of interest in a witness, is wholly immaterial.   If the assignees chose to proceed in the action without an immediate substitution, the act must be imputed to themselves, and they must submit to the consequences.   The court will deem themselves bound by their own record.   Trustees appointed by statute, governors and directors of the poor of a certain parish, are not witnesses upon an appeal to the sessions against a rate made by them, though they are entitled to be reimbursed such costs out of the parochial fund; because they are parties to the cause, and liable to the costs in the first instance.   3 East, 7. And Lord Chief Justice ELLENBOROUGH said, that though persons clothed with naked trusts, have been admitted as witnesses, no such case can be quoted, where the person was both party to the suit, and liable individually to costs.   Ib. 13.   Here the costs should have been deposited in court before the plaintiff was ex-

amined, as was done in M'Clenachan *v.* Scott, in the Common Pleas, in March term 1791. The defendants may well have a double remedy for their costs. And besides these costs may be well deemed a contingent debt.

To this the plaintiff's counsel answered, that the entry on the docket was only evidence, but not conclusive. Such matter obtained in the action of William Wayne Duncanson, tried here last September term. The present action was entered at the instance of Elliston and John Perot, who had an equitable assignment of the policy.

In consequence of a letter written by their counsel to James Cox, the president of the insurance company, dated 31st August 1799, the suit was brought on the docket. It was communicated to the plaintiff and he was occasionally applied to for information about facts; but he did not know of the action being brought solely in his own name. He had no control over it, nor could he have discontinued. If a writ of error be brought after a bankruptcy, to reverse a judgment against the bankrupt before, and the judgment be affirmed, the costs of the writ of error refer to the judgment; and the bankrupt's certificate discharges him as to the costs, as well as with regard to the judgment. 6 T. R. 282. This is much stronger than the present case, and the *authority furnishes a full answer to what has been said about the costs being a contingent debt. [*122 Our notes do not agree, as to the costs being deposited in M'Clenachan *v.* Scott, previous to the plaintiff's examination; and in M'Euen *v.* Gibbs, in this court, the plaintiff was sworn after his bankruptcy, without depositing any costs. By the 13th section of the act of congress of 4th April 1800 (5 U. S. Laws, 55,) the assignment by the commissioners vests all the debts due to the bankrupt in the assignees, and they may proceed in actions pending in the name of such bankrupt; but the latter can have no interest or benefit therein. The idea of entering two judgments for costs in the same suit, the one against the plaintiff and the other against his assignees, is a perfect novelty in judicial proceedings!

The court said it was impossible to support the exception against the deposition, on the ground of interest. Can the assignees by their own act, in which the unfortunate bankrupt has no participation, and over which he has no control, make him responsible for costs, after he has conformed to the law in all things? The substitution in this case clearly refers to the time of the assignment. The deposition must be read. But how can the plaintiff get over the sentence of the Court of Appeals, which directly falsifies the warranty in the policy, that the goods were lawful?

The counsel for the defendants agreed, that the court had put the cause on its true point.

[Browne *v.* Insurance Co. of Pennsylvania.]

A warranty is inserted in this policy, that the goods shipped on board the Betsey, the objects of the insurance, should be lawful. It is a binding condition on the insured, and unless he can shew that he has literally fulfilled it, the contract is the same as if it had never existed. Park 363. 1st ed. Here is no ambiguity or doubt, on what ground the decision by the commissioners of appeal in prize cases in Great Britain turned; and the books are filled with authorities, that wherever the ground of the sentence is manifest, and it appears to have proceeded expressly upon the point in issue between the parties, the courts will not take upon themselves, in a collateral way, to review the proceedings of a forum, having competent jurisdiction of the subject matter. Ib. 417. Among the many cases which may be marshalled on this head, the court are referred to Bernardi *v.* Motteux, Ib. 403. Barzillay *v.* Lewis, Ib. 410. Saloucci *v.* Woodmass, Ib. 413. Mayne *v.* Walter, Ib. 414. Garrels *et al. v.* Kensington, 8 Term Rep. 232. Blackham's case, 1 Salk. 290. Jones *v.* Bow, Carth. 225. In Innersly *et al. v.* Chase, Park 363, 5th ed., at the cockpit, it is said to be clear from *123] *the time of Lord HOLT down to the present period, that the decision of a Court of Admiralty, on the ground of property, is binding on all persons in all cases.

BY THE COURT. Whatever our ideas of the final sentence in the court of appeals may be, their decree is conclusively binding upon us. 7 Term Rep. 695, *per* Lord Ch. Jus. KENYON. We cannot avoid saying, that we were astonished at the decision in the *dernier resort;* but we are bound to decide according to settled and established rules. The peace of civilized nations demands of us, that we should give full credit to the judgments of foreign courts, having competent jurisdiction over the subject matter, and are compelled in this instance to decide against our individual feelings as men. It appears to us, sitting as judges, that the warranty in the policy is falsified by the sentence of condemnation, that the cargo insured was good and lawful prize, belonging to the enemies of Great Britain, and that the plaintiff cannot legally recover thereupon.

The plaintiff's counsel observed, they could not proceed further. They would take a bill of exceptions, in order to settle the legal question finally in the High Court of Errors and Appeals.

COURT. Be it so; we will readily seal the bill. We think the case a very hard one; but we come to decide the matter, "bound "and shackled by certain rules from which we dare not de- "part." *Ibid.*

Verdict for the defendants.

Messrs. E. Tilghman and Rawle, *pro quer.*

Messrs. Ingersoll and Lewis, *pro def.*